**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jorge MENDEZ-ORTIZ,**
**Defendant-Appellant.**

**No. 85–3975.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 7, 1986.

Dec. 4, 1986.

Certiorari Denied March 9, 1987.
See 107 S.Ct. 1384.

Mark B. Weisser, argued, Martin Young & Assoc., Cincinnati, Ohio, for defendant-appellant.

Kathleen M. Brinkman, Cincinnati, Ohio, for plaintiff-appellee.

Before KENNEDY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant Jorge Mendez-Ortiz was convicted of conspiracy "to possess with intent to distribute quantities of heroin" in violation of 21 U.S.C. § 846. On appeal defendant argues that the district court committed reversible error by admitting testimony from a government witness which indicated that defendant had threatened and attempted to bribe the witness and by refusing to instruct the jury on the defense of indirect entrapment. Finding no merit in these arguments, we affirm.

### I.

In late 1984, Special Agent Richard Stuart of the Drug Enforcement Administration ("DEA") and Special Agent Steve Barnett of the Federal Bureau of Investigation ("FBI") commenced an undercover operation in Cincinnati, Ohio, which resulted in two undercover purchases of heroin from Larry Tapager. In March 1985, Agent Stuart again contacted Tapager, who was living with Gary Blair and Autumn Strange near Seattle, Washington. Through a series of telephone conversations with Tapager and Blair, Agent Stuart made two undercover purchases of heroin from them by mail.

On May 9, 1985, Agents Stuart and Barnett arrested Tapager in Seattle. After a series of telephone conversations between Agent Stuart and Blair and a dinner attended by Blair, Strange and the agents, Blair agreed to supply heroin to the agents. At approximately 12:10 p.m., Blair told Agent Stuart by telephone that he would contact his supplier and get the heroin. Immediately thereafter, four calls were made from Blair's telephone to 955–7582. When Agent Stuart called back to learn whether Blair had arranged delivery of the heroin, Blair said he had not reached his source. After Agent Stuart completed his call to Blair, another call was placed from Blair's telephone to 955–7582.

Telephone records of a residence in North Bend, Washington, show calls at 1:33 p.m. and 1:36 p.m. to Blair's telephone. At 1:41 p.m. Blair telephoned Agent Stuart and said that all was set and that he would meet him in an hour and ten minutes. At 2:55 p.m., defendant and Blair were seen by the agents meeting at a gas station in Bellevue, Washington. After Blair left, the agents arrested defendant. At 3:07 p.m., Blair called Agent Stuart and said that he was ready to do the deal. Later, Blair was arrested.

When the agents arrested defendant, no heroin was found on his person, but a small vial of heroin was found in the car which he was driving. The agents also seized a pager with the number 955–7582 from the front seat of the car. The pager's digital display showed 486–5806, the number at Blair's residence.

The agents located the residence in North Bend, Washington, which Blair had called before he told DEA Agent Stuart the

heroin delivery was set to go. The North Bend residence was a rental property, and the property's owner identified defendant as one of the two men who rented the residence from him. Telephone records for Blair's telephone for January 29, 1985, to May 9, 1985, reflect a pattern: on numerous occasions there are one or more calls from Blair's number to the pager whose number was 955–7582, followed eventually by a call from the North Bend residence to Blair's number. The telephone at the North Bend residence was subscribed in a name which was a combination of the name of defendant's wife and the last name of defendant's cousin.

At defendant's trial, Blair testified that defendant was the source of the heroin which Blair and Tapager sent by mail to the agents in Cincinnati and that defendant had agreed to bring fourteen to nineteen grams of heroin when he met with Blair in Bellevue, Washington. Blair also testified that defendant told him that another person was holding the heroin and watching the meeting between them (Blair and defendant), that defendant agreed to deliver the heroin only after he (Blair) met with his buyers and signaled defendant that it was safe to make the heroin delivery, and that defendant had been his only source of heroin for six to nine months prior to their arrest.

Blair further testified that he and defendant had been arrested at about the same time, that he and defendant were locked up together, and that defendant blamed him for his arrest and told him basically, "Don't mess with us." Finally, Blair testified that defendant offered to pay him and to set him up in the heroin business if he would testify that another person was his heroin supplier and that defendant was merely driving the car owned by this other person.

John Floberg testified that defendant paid him to transport money and heroin between California and Washington during the period September 1984 to February 1985. Craig Wolfe testified that he purchased heroin from defendant weekly during the period August 1984 to April 1985. Tapager and Strange testified that they had seen defendant at Blair's residence on numerous occasions.

Defendant testified that he purchased heroin from Blair on about six occasions, one of which was on May 9, 1985. However, defendant denied being involved in any other heroin transactions and denied that he had agreed to supply heroin to Blair.

## II.

### A. *Admission of Testimony.*

Defendant argues that the district court's admission of Blair's testimony that he threatened and attempted to bribe Blair was a "patent violation" of Federal Rule of Evidence 404(b). While defendant objected to admission of Blair's testimony on the basis of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), defendant did not assert, as is required, the specific ground for objection he now urges on appeal. Joint Appendix at 30–37.

Because defendant did not raise Rule 404(b) at trial, this court must consider defendant's argument under the plain error standard of review. Fed.R.Evid. 103; *see also Helminski v. Ayerst Laboratories*, 766 F.2d 208, 211 (6th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985). The plain error doctrine is to be used "only in exceptional circumstances" and only where the error is so plain that " 'the trial judge and prosecutor were derelict in countenancing it.' " *United States v. Hook*, 781 F.2d 1166, 1172 (6th Cir.) (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)), *cert. denied*, —— U.S. ——, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986).

Rule 404(b) forbids admission of evidence of other crimes or acts when offered "to prove the character of a person in order to show that he acted in conformity therewith." Evidence of other crimes or acts may, however, be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowl-

edge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The list of permissible uses of evidence of other crimes or acts set forth in Rule 404(b) is neither exhaustive nor conclusive. *United States v. Wesevich,* 666 F.2d 984, 988 (5th Cir.1982); *United States v. Johnson,* 634 F.2d 735, 737 (4th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1974, 68 L.Ed.2d 295 (1981); *United States v. Williams,* 577 F.2d 188, 192 (2d Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). Rule 404(b) admits evidence of other crimes or acts if the evidence is not offered to prove the conduct of a person by resort to an inference as to his character, regardless of whether it fits within one of the listed uses. *See United States v. Shaw,* 701 F.2d 367, 386 (5th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984); *United States v. Bradshaw,* 690 F.2d 704, 708 (9th Cir.1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *United States v. Papadakis,* 510 F.2d 287, 294 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975).

 Though not listed in Rule 404(b), spoliation evidence, including evidence that defendant attempted to bribe and threatened a witness, is admissible to show consciousness of guilt. *United States v. Corbin,* 734 F.2d 643, 656 (11th Cir.1984); *United States v. Gonzalez,* 703 F.2d 1222, 1223 (11th Cir.1983) (per curiam); *United States v. Gonsalves,* 668 F.2d 73, 75 (1st Cir.), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1759, 72 L.Ed.2d 168 (1982); *United States v. Monahan,* 633 F.2d 984, 985 (1st Cir. 1980) (per curiam); *United States v. Posey,* 611 F.2d 1389, 1391 (5th Cir.1980); *United States v. Buigues,* 568 F.2d 269, 273 (2d Cir.1978); *United States v. Franks,* 511 F.2d 25, 36 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975). The fact that defendant attempted to bribe and threaten an adverse witness indicates "his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit." II Wigmore, *Evidence* § 278 (Chadbourn Rev. 1979); *see also Gonsalves,* 668 F.2d at 75; *Monahan,* 633 F.2d at 985. Because spoliation evidence tends to establish consciousness of guilt without any inference as to the character of the spoliator, its admission does not violate Rule 404(b). 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5240, at 476 (1978).

 Although admissible for this purpose, spoliation evidence should not be admitted if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. "Unfair prejudice," as used in Rule 403, does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis. *Wade v. Haynes,* 663 F.2d 778, 783 (8th Cir.1981), *aff'd,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *see also Koloda v. General Motors Corp.,* 716 F.2d 373, 378 (6th Cir.1983). Blair's testimony, although highly probative of defendant's guilt, was not inflammatory and presented little danger of unfair prejudice. *See Monahan,* 633 F.2d at 985. Thus, the district court's failure to exclude the evidence *sua sponte* does not rise to the level of plain error.

*B. Indirect Entrapment.*

 Defendant contends that, in light of the evidence that Tapager, Blair and Strange were acting as agents of the government, the district court erred in refusing to instruct the jury on indirect entrapment.[1] "To rely on the defense of entrapment, the defendant must admit all elements of the offense." *United States v. Whitley,* 734 F.2d 1129, 1139 (6th Cir.1984); *see also United States v. Robinson,* 763 F.2d 778, 782 n. 6 (6th Cir.1985); *United States v. Ranzoni,* 732 F.2d 555, 560 (6th

---

1. The indirect entrapment defense, adopted by the Second Circuit in *United States v. Valencia,* 645 F.2d 1158 (2d Cir.1980), has not been adopted by this court. *United States v. McLernon,* 746 F.2d 1098, 1109 (6th Cir.1984).

Cir.), *cert. denied,* 469 U.S. 916, 105 S.Ct. 292, 83 L.Ed.2d 228 (1984). Since defendant denied participation in the offense charged, he could not assert his entrapment defense at trial and cannot raise it on appeal. *Ranzoni,* 732 F.2d at 560.

### III.

The judgment of the district court is AFFIRMED.