829 F.2d 39
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert T. PORTER (86-5745), Jerome J. Palumbo (86-5746),
Defendants-Appellants.
 Nos. 86-5745, 86-5746
 United States Court of Appeals, Sixth Circuit.
 September 9, 1987.
 
 Before CORNELIA G. KENNEDY, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants-appellants Robert T. Porter and Jerome J. Palumbo appeal their convictions of conspiracy to defraud the Federal Deposit Insurance Corporation ('FDIC') in violation of 18 U.S.C. Sec. 371, making false entries on the books of a bank in violation of 18 U.S.C. Sec. 1005, and making false statements for the purpose of obtaining bank loans in violation of 18 U.S.C. Sec. 1014. Defendant Porter also appeals from his conviction of misapplication of bank funds in violation of 18 U.S.C. Sec. 656. The principal arguments on appeal are that: (1) the district court erred by permitting the prosecution to elicit testimony from seven of its witnesses concerning their prior convictions and guilty pleas for the purpose of exposing defendants to the impermissible inference of guilt by association, and (2) the district court erred by permitting the prosecution to introduce evidence concerning the 'Classic Car loans,' which, according to defendants, was a 'blatant attempt by the prosecution to show other crime evidence in order to establish bad character and propensity to commit crimes.'[1] For the reasons that follow, we affirm.
 
 I.
 
 2
 The charges against defendants stem from their activities at the Sparta Sanders State Bank, a small bank located in Gallatin County, Kentucky. The evidence showed that in 1981 the Sparta Sanders Bank was operating under a cease and desist order which had been issued because of the unsound financial conditions existing at the bank. The bank was ordered to increase its capital by approximately $315,000.00 before May 9, 1982, or else the bank's insurance would be rescinded. During this time, defendant Porter was vice-president and a major shareholder of the bank.
 
 
 3
 The evidence further showed that in order to meet the deadline and raise the needed capital, defendant Porter enlisted the assistance of defendant Palumbo and others. Rather than attempting to raise the money through legitimate sources, defendants decided to obtain the funds from the bank itself by making a series of loans to family members and friends of defendants who, in turn, gave the money back to defendants. The evidence showed that the loans were either obtained without collateral or were under-collateralized. As a result of his involvement, defendant Palumbo became a major shareholder of the bank.
 
 
 4
 The prosecution called as witnesses each of the fourteen people who had either obtained loans for defendants or assisted them in laundering the funds. The government impeached the credibility of five of these witnesses by introducing evidence of their prior felony convictions. Linda Lykins, defendant Porter's secretary, testified that she had been listed as a corporate officer of two of defendant Porter's companies. Further, Lykins testified that she could not recall that as a vice-president of one of these companies she had signed blank promissory notes for Sparta Sanders Bank, even though she identified her signature on the blank notes that were introduced as exhibits. Finally, Lykins testified, without objection from defendants, that she had been convicted of 'the felony offense of a conspiracy violation [sic] of Federal laws.'
 
 
 5
 Samuel Isaac testified that when he was $400,000.00 in debt and on the verge of having his house sold at a sheriff's sale, he secured a $160,000.00 loan from Sparta Sanders Bank. Further, Isaac testified that rather than repaying his creditors, he used the first $22,500.00 of the loan proceeds to purchase stock in Sparta Sanders Bank. Finally, Isaac testified that he purchased the stock even though he knew the bank was in serious financial trouble and that the notes were not paid when they matured.
 
 
 6
 The prosecution asked Mr. Isaac whether he had previously been convicted of 'mail fraud, embezzlement and--.' Defendants objected on the grounds that the question was improper because it inquired into the details of the conviction and that defendants' counsel had not been informed of the conviction prior to trial. The district court overruled the objection, but inquired whether any other witnesses would be called and impeached by prior felony convictions. The prosecution informed the district court that five other such witnesses would be called, and the district court offered to 'instruct the jury at the close . . . as a part of my charge to the jury about the impeachment of witnesses.'
 
 
 7
 Defendants requested the court to 'admonish the jury of the fact of this witness' conviction upon his testimony if any for the jury to believe if there is any [sic]. Also, . . . the fact that this person has been convicted of a felony previously is not in any way to go to the guilt or innocence of the Defendants on trial.' The district court instructed the jury that 'the fact that this witness or any witness that may hereafter testify that may have previously been convicted of a felony or a crime involving dishonesty or false statement is just a factor that you may consider in weighing the credibility of that witness.' Defendants failed to object to the limiting instruction.
 
 
 8
 Jack Pickett, a real estate appraiser who attributed fifty per cent of his appraisals to defendant Porter, testified that when he incurred cash flow problems, he secured a $15,000.00 loan from Sparta Sanders Bank and that he used the money to purchase stock in the bank. Prior to the prosecution's asking Pickett whether he had previously been convicted of a 'felony offense of conspiracy' in violation of 18 U.S.C. Sec. 371, defendants objected 'for the same reason that was given yesterday' and on the ground of materiality. Defendants' counsel urged that the question was 'totally irrelevant as to whether the credit, it's a question really to the credibility and believeability and impeachment of this witness as to what's relevant to defendants would be [sic].' The district court overruled this objection, and Pickett testified that he had 'pled guilty' to the offense.
 
 
 9
 Elaine Oney, defendant Porter's sister, testified that she had, at the direction of defendant Porter, borrowed money from Sparta Sanders Bank and had deposited it in the account of one of her brother's companies. Further, Oney testified that she had helped launder proceeds from loans made to her brother by defendant Palumbo and that she had signed blank promissory notes for her brother's benefit. Prior to the prosecution's asking Oney if she had been convicted of conspiracy in violation of 18 U.S.C. Sec. 371, a bench conference was held off the record, and no objection was recorded.
 
 
 10
 Judy Porter, defendant Porter's wife, testified that she was unsure whether she owned stock in the Sparta Sanders Bank and that her role in her husband's various companies was very minimal. Further, Porter testified that she had signed a mortgage which served as collateral for the loan to Elaine Oney. Prior to the prosecution's asking Porter whether she had been convicted of conspiracy in violation of 18 U.S.C. Sec. 371, a bench conference was held off the record, and no objection was recorded.
 
 
 11
 The prosecution called two other witnesses who had pleaded guilty to charges stemming from their involvement in defendants' scheme. Charles Labanz, a former vice-president and major shareholder of Sparta Sanders Bank, testified for the prosecution concerning his knowledge of defendants' scheme to misapply bank funds. Prior to the prosecution's asking Labanz whether he had pleaded guilty to charges of conspiring to defraud the FDIC and misapplication of bank funds, the district court asked defendants if there were any objections. Defendants responded that 'That is a separate indictment. I believe that would have nothing to do with this case. I would object.' Defendants also requested that the court admonish the jury that 'the fact that these witnesses have been convicted, again, is--goes to their credibility and not to the guilt or innocence of these Defendants.' The district court agreed to give the admonition in the final charge, and, as a part of the final charge, the district court instructed the jury that '[t]he fact that a witness has previously been convicted of a felony or a crime involving dishonesty or false statement is also a factor that you may consider in weighing the credibility of that witness.' Defendants made no objection to the district court's charge.
 
 
 12
 David Taylor, a former vice-president of Sparta Sanders Bank, testified that he was enlisted by defendants to falsely apply for a loan with the proceeds of the loan being returned to defendants Porter and Palumbo. Prior to the prosecution's asking Taylor if he had pleaded guilty to the felony offense of making a false material statement to a bank, defendants objected on the grounds that 'the matter hasn't been consummated' and that the government was trying to 'discredit, or bolster,' rather than impeach the witness. The prosecution responded that the evidence was not offered to impeach the witness, but to make the jury aware of 'the circumstances under which he appeared as a witness.' The district court overruled defendants' objection.
 
 
 13
 The prosecution also called Gregory Coyle, a liquidator for the FDIC, who testified about the loans made to defendants, their companies, and their families and friends. Coyle testified that defendant Palumbo owned the company named Classic Cars, which had obtained $2,000,000.00 in loans from Sparta Sanders Bank before the bank failed in April of 1983. Coyle used a chart to summarize these loans, and the chart indicated the loans that had been made to Classic Cars. The prosecution offered this evidence for the purpose of showing 'the motivation of the defendants for the things that they did. Mr. Palumbo wasn't just buying a bank because he was trying to save a sinking ship, as we have heard testimony about.'
 
 
 14
 Prior to admission of the evidence of the Classic Car loans, defendants objected, urging that: 'The Classic Cars that the government has designated as Palumbo's, which, number one, we take great issue with. . . . [T]here has been no testimony from any witness relative to these. These were not Palumbo's.' Defendants further explained that: 'It was just our position on the Classic Cars; this was in the nature of 404(b) evidence. I thought if the government was going to try to open that up, that there would be live witnesses.' The district court overruled the objection and denied defendants' subsequent motion to strike the testimony concerning tha Classic Car loans. The district court also denied defendants' request for a limiting instruction, explaining that it preferred not to comment on the evidence.
 
 II.
 A. Prior Convictions and Guilty Pleas
 
 15
 Defendants argue that the district court erred by permitting the prosecution to elicit testimony from seven of its witnesses concerning their prior convictions and guilty pleas for the purpose of exposing defendants to the impermissible inference of guilt by association. Rule 103 of the Federal Rules of Evidence requires that all objections to the admission of evidence must be stated specifically. '[A] specific objection made on the wrong grounds and overruled precludes a party from raising a specific objection on other, tenable grounds on appeal.' J. Weinstein & M. Berger, 1 Weinstein's Evidence p103, at 103-25-103-26 (1986); see also United States v. Mendez-Ortiz, 810 F.2d 76, 78 (6th Cir. 1986), cert. denied, 107 S. Ct. 1384 (1987). Because defendants did not assert in the district court the specific ground for objection they now urge on appeal, we must consider defendants' argument under the plain error standard of review. See Mendez-Ortiz, 810 F.2d at 78; Helminski v. Ayerst Laboratories, 766 F.2d 208, 211 (6th Cir.), cert. denied, 106 S. Ct. 386 (1985). '[T]he plain error doctrine is to be used sparingly. . . . only in exceptional circumstances, . . . and solely to avoid a miscarriage of justice. . . . Recourse may be had to the doctrine 'only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it." United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.) (quoting United States v. Frady, 456 U.S. 152, 163 (1982)) (citations omitted), cert. denied, 107 S. Ct. 269 (1986); see also Mendez-Ortiz, 810 F.2d at 78.
 
 
 16
 The prosecutor impeached the credibility of Lykins, Isaac, Pickett, Oney, and Porter by eliciting testimony that they had previously been convicted of felonies. Rule 607 of the Federal Rules of Evidence provides that '[t]he credibility of a witness may be attacked by any party, including the party calling the witness.' The prosecution's 'questioning of its own witnesses concerning prior felony convictions is admissible to enable the jury to weigh the credibility of the witnesses.' United States v. Bileck, 776 F.2d 195, 197 (7th Cir. 1985). The prosecution "does not hold out [its] witness[es] as worthy of belief," and its 'candor . . . in eliciting the fact that a witness has a felony conviction is to let the jury know precisely the kind of witness [it] is relying on.' Belick, 776 F.2d at 197-98 (quoting Advisory Committee Notes on Rule 607).
 
 
 17
 'Rule 607 may not, however, be used 'for the purpose of introducing irrelevant evidence or of establishing the defendant's guilt by association with the witness." United States v. Townsend, 796 F.2d 158, 162 (6th Cir. 1986) (quoting United States v. Gorny, 732 F.2d 597, 604 (7th Cir. 1984)). The prosecution's conduct must be carefully scrutinized to ensure that a witness is not called merely for the purpose of introducing this sort of improper evidence. Gorny, 732 F.2d at 604. Our review of the record in the present case shows that the testimony of these five witnesses was extremely important and that the prosecution impeached their credibility because of their hostility and failure to be forthcoming. Thus, the district court's failure to exclude the testimony does not rise to the level of plain error.
 
 
 18
 The prosecution also elicited the testimony of Taylor and Labanz that they had previously pleaded guilty to felony charges for the purpose of informing the jury of the circumstances under which they appeared as witnesses. While the guilty plea of a compatriot may not be considered as substantive evidence of the defendant's guilt, the guilty plea 'may properly be considered as evidence of a witness' credibility. . . . '[U]nder proper instruction, evidence of a guilty plea may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witnesses the government asks them to believe." United States v. Christian, 786 F.2d 203, 214 (6th Cir. 1986) (quoting United States v. Halbert, 640 F.2d 1000, 1004 (9th Cir. 1981)) (citation omitted); see also Townsend, 796 F.2d at 162. The district court in the present case instructed the jury that 'the fact that an accomplice has entered a guilty plea to the offense charged is not evidence, in and of itself, of guilt or innocence-of the guilt of any other person.' Thus, the district court's failure to exclude the testimony does not rise to the level of plain error.
 
 
 19
 Defendants further argue that the district court erred by failing to instruct the jury that the testimony of the witnesses concerning their prior convictions should not be considered in assessing the guilt or innocence of defendants. While defendants twice asked the district court to instruct the jury that a prior conviction is a factor to be considered in assessing witness credibility and that a witness' prior conviction should not be considered in assessing the guilt or innocence of defendants, defendants made no objection when the district court twice gave only the initial portion of the requested instruction. Defendants' requests alone were not sufficient to preserve their objection to the limiting instruction. 'If counsel requests a limiting instruction, but is dissatisfied with the one given, he must then make an objection to the instruction that is timely and specific.' 21 C. Wright & K. Graham, Federal Practice and Procedure Sec. 5065, at 325 (1977); see also United States v. Dozier, 672 F.2d 531, 543 (5th Cir.), cert. denied, 459 U.S. 943 (1982). Defendants made no timely and specific objections, and we do not consider the district court's failure to give the requested instruction in its entirety plain error. The evidence of defendants' guilt was overwhelming, and the instruction given by the district court was sufficient to minimize any possible unfair prejudice to defendants.
 
 B. Classic Car Loans
 
 20
 Defendants argue that the district court erred by permitting the prosecution to introduce evidence concerning the 'Classic Car loans,' which, according to defendants, was a 'blatant attempt by the prosecution to show other crime evidence in order to establish bad character and propensity to commit crimes.' Rule 103 of the Federal Rules of Evidence requires that an objection be 'timely' if it is to be preserved for appellate review. '[T]he appropriate time for raising an objection is as soon as the ground for objection is known, or could reasonably have been known to the objector--unless some special reason makes its postponement desirable and not unfair to the opposition.' United States v. Gibbs, 739 F.2d 838, 849 (3d Cir. 1984) (en banc), cert. denied, 469 U.S. 1106 (1985); see also 21 C. Wright & K. Graham, supra, Sec. 5037, at 188. Rule 404(b) is a rule of inclusion and not exclusion, and defendants' oblique comment that the evidence was 'in the nature of 404(b) evidence,' when considered in context, was not sufficient to alert the district court that defendants considered the evidence inadmissible evidence of character. Moreover, defendants' subsequent motion to strike on the basis of Rule 404(b) was untimely because the basis of defendants' objection was apparent prior to introduction of the evidence. Thus, we must consider defendants' argument under the plain error standard of review.
 
 
 21
 'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.' However, evidence of other crimes or acts may 'be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' Fed. R. Evid. 404(b); see also Mendez-Ortiz, 810 F.2d at 78-79. Coyle's testimony concerning the Classic Car loans was introduced for the proper purpose of establishing that the motive behind defendants' scheme was to procure bank funds for personal use. Although admissible for a proper purpose, evidence may still 'be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.' Fed. R. Evid. 403. While highly probative, the evidence of the Classic Car loans was not inflammatory and presented little danger of unfair prejudice. Thus, the district court's failure to exclude the evidence does not rise to the level of plain error.
 
 
 22
 Defendants did, however, make a timely request that the jury be instructed with respect to the limited purpose for which the evidence of the Classic Car loans was admitted. Rule 105 of the Federal Rules of Evidence provides that '[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.' (emphasis added). While the district court's policy of not commenting on the evidence was obviously not a sufficient basis to deny the instruction, the refusal to give the instruction was harmless. The district court later instructed the jury that 'defendants are not on trial for any act not charged in the indictment,' and the evidence of defendants' guilt was overwhelming.
 
 III.
 
 23
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Defendant Porter also argues in his supplemental pro se brief that his double jeopardy rights were violated, that he was deprived of effective assistance of counsel, that the district court should have ordered a severance, and that the prosecution failed to disclose exculpatory evidence. Having reviewed the record, we find these arguments are without merit and warrant no discussion