968 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas SILVESTRI and Danny Fisher, Defendants-Appellants.
 Nos. 91-1870, 91-1906.
 United States Court of Appeals, Sixth Circuit.
 July 21, 1992.
 
 Before KEITH and RYAN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 This case presents the consolidated appeals of defendants Thomas Silvestri and Danny Fisher. Silvestri appeals from his jury conviction on nine counts arising from his involvement in a conspiracy to manufacture and distribute amphetamine, 21 U.S.C. §§ 841, 843, 846, 856, 858, and 18 U.S.C. § 2. Fisher appeals from his jury conviction on five counts arising from the same conspiracy, 21 U.S.C. §§ 841, 846, 856, and 18 U.S.C. § 2.
 
 
 2
 Both defendants raise issues relating to alleged prosecutorial misconduct during rebuttal closing argument:
 
 
 3
 1. Whether the prosecutor committed reversible error when he referred to the defendants' failure to play certain tapes that were not introduced into evidence?
 
 
 4
 2. Whether the prosecutor committed reversible error when he referred to the drug problem in this country?
 
 Fisher raises two separate issues:
 
 5
 1. Whether the prosecutor committed reversible error when he questioned a witness about that witness' fear of Fisher and later commented on this fear during closing argument?
 
 
 6
 2. Whether the prosecutor committed reversible error when he denigrated the view of Fisher's trial counsel during rebuttal closing argument?
 
 
 7
 We conclude that the defendants' convictions should be affirmed.
 
 I.
 
 8
 This prosecution arose from an operation to manufacture and distribute amphetamine that involved three people: Silvestri, a chemist who manufactured the drug; Fisher, owner of the two locations where Silvestri manufactured the drug; and cooperating co-conspirator Steven Thomson, a Fisher employee who distributed the amphetamine. The conspiracy involved two locations in Detroit, both owned by Fisher. One was the Thomson Trucking depot on Jefferson. Thomson managed Thomson Trucking for Fisher, and Silvestri initially manufactured the amphetamine at the depot. The other was a residence on Falcon Street, where Silvestri later manufactured the amphetamine.
 
 
 9
 In October 1989, Silvestri set up a lab to produce amphetamine at Thomson Trucking. In December 1989, the lab was dismantled, and in January and February 1990, Silvestri, Fisher, and Thomson moved equipment to the Falcon Street residence, where a new lab was set up in part of the house. In January 1990, an employee of Thomson Trucking began cooperating with DEA investigators as a paid informant. With his cooperation, a DEA agent made three controlled buys of amphetamine from Thomson in March 1990. After these buys, Thomson and Silvestri were arrested at the depot. Silvestri had on his person prerecorded government funds from the three prior sales. A search of the depot revealed papers connecting Fisher to the Falcon Street residence, and a subsequent search of the residence resulted in the discovery of the second amphetamine-manufacturing lab.
 
 
 10
 In August 1990, an indictment charged Silvestri and Thomson with manufacturing, possessing with intent to distribute, and distributing amphetamine. Subsequently, Thomson pleaded guilty, and became a government witness. In January 1991, a superseding indictment was filed, omitting charges against Thomson but adding charges against Fisher.
 
 
 11
 In April 1991, Silvestri and Fisher were tried before a jury. The jury found Silvestri and Fisher guilty on all counts. The district court sentenced Silvestri to 235 months imprisonment followed by 3 years supervised release, and Fisher to 151 months imprisonment followed by 3 years supervised release. Both defendants timely appeal their convictions.
 
 II.
 A.
 
 12
 Prosecutor's Comment on Defendants' Failure to Play Tapes
 
 
 13
 Silvestri and Fisher contend that the prosecutor violated their fifth amendment rights when, in his rebuttal closing argument, he referred to their failure to play tapes of conversations recorded on listening devices worn by a DEA agent and Thomson.
 
 
 14
 During closing argument, counsel for defendant Silvestri questioned the government's motive for not playing the tapes. In his rebuttal, the prosecutor stated:
 
 
 15
 Yes, there were tapes in this case.
 
 
 16
 I told you that at the beginning, but you had the witnesses here.
 
 
 17
 Both Defendants have the tapes.
 
 
 18
 Now, they have no obligation whatsoever to present a defense. None. The burden is entirely on the Government.
 
 
 19
 But, if those tapes said anything different from what you heard from the stand, you would have heard them from the Defendants.
 
 
 20
 The tapes are of low quality.
 
 
 21
 MR. BUFALINO [counsel for Silvestri]: Objection, Your Honor.
 
 
 22
 After a short sidebar conference, the district court gave the jury a lengthy curative instruction, directing the jury to disregard the prosecutor's comments and informing the jurors that they may not draw any inference from the defendants' decisions not to testify or play the tapes.
 
 
 23
 We employ a two-part analysis to determine whether the prosecutor's comments constituted reversible error. The first inquiry is whether the prosecutor's statements amounted constitutional error. If yes, the second question is whether the error is harmless? Because we find that the prosecutor's comments were not constitutional error, we do not reach the harmless error inquiry.
 
 
 24
 The constitutional error inquiry requires that we determine whether the prosecutor's comments infringed on the defendant's privilege against self-incrimination. The government argues that the prosecutor's comments were a fair response to statements made by defense counsel. We agree.
 
 
 25
 The Supreme Court has held that a prosecutor's reference to a defendant's failure to testify does not violate the privilege against self-incrimination if the reference is a fair response to a defendant's argument. United States v. Robinson, 485 U.S. 25, 32 (1988). The Court specifically stated that there was a difference between treating silence as substantive evidence of guilt and adverting to that silence when responding to a defendant's argument. Id. at 34. This circuit has applied this doctrine in United States v. Pearce, 912 F.2d 159 (6th Cir.1990), cert. denied, 111 S.Ct. 978 (1991). Although the prosecutor in Pearce referred to the defendant's failure to call a particular witness, the court found no prejudicial error, reasoning: "Defense counsel had implied that the government had an improper motive for not calling [the witness] to testify. The government's remarks were an attempt to respond to the defense's prior assertion...." Id. at 164.
 
 
 26
 In this case, defense counsel implied that the government had an improper motive for not playing tapes of conversations. He argued that the government had not "really wanted to tell you [the jury] what was going on." The prosecutor responded that if the tapes "were different from what you heard on the stand, you would have heard them from the defendants." The prosecutor's comment did not treat defendants' failure to testify as an admission of guilt. Rather, it was a fair response to the defendant's argument, and did not infringe on the defendants' fifth amendment rights.
 
 B.
 Reference to Nation's Drug Problem
 
 27
 Both defendants argue that the prosecutor's reference to the country's drug problem distracted the jury from the facts of the case and indirectly attempted to convince the jury to convict the defendants as a blow against society's drug problem. In his rebuttal, the prosecutor stated:
 
 
 28
 The Government has much better things to do with itself than chase Thomas Silvestri and Danny Fisher.
 
 
 29
 The drug problem in this Country is of a magnitude way too large for the Government to waste its time with people that have been sucked into something by two bought witnesses.
 
 
 30
 We note that neither defendant objected to the prosecutor's statement. Lacking an objection, we analyze the statement under the plain error standard. Errors not brought to the attention of the trial court may be noticed if they are plain errors. Fed.R.Crim.P. 52(b). "Plain errors are limited to those harmful ones that so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputations of the trial." United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). We must determine whether the error was so plain that "the trial judge and prosecutor were derelict in countenancing it." United States v. Frady, 456 U.S. 152, 163 (1982). Appellate courts should apply the plain error doctrine only in exceptional cases. United States v. Evans, 883 F.2d 496, 499 (6th Cir.1989).
 
 
 31
 In evaluating a prosecutor's remarks, this court should consider the potential the remarks have to prejudice the defendant and confuse the jury and the strength of the proof against the defendant. United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990). "Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." United States v. Solivan, 937 F.2d 1146, 1151 (6th Cir.1991).
 
 
 32
 We feel that the prosecutor's comment about the drug problem was inappropriate; we must, however, determine whether permitting the comment constituted plain error. We conclude that it did not. The comment was not calculated to incite the passions of the jury, in light of the fact that the prosecutor did not ask the jury to convict Silvestri and Fisher because they were part of society's drug problem. Rather, the prosecutor was, to some degree, responding to the defense argument that the government manufactured its case with "bought witnesses."
 
 
 33
 The comment was not so prejudicial as to strike at the fundamental fairness of the trial, and permitting it did not constitute plain error.
 
 C.
 
 34
 Questions about and Reference to Witness' Fear of Fisher
 
 
 35
 Fisher raises two issues independently of Silvestri. Fisher argues first that Thomas Meshinski's testimony, that he feared Fisher, was not relevant and was inadmissible under Fed.R.Evid. 404(b). Fisher also contends that the prosecutor's reference to this testimony during rebuttal closing argument prejudiced the jury.
 
 
 36
 Meshinski's testimony detailed Fisher's involvement in leasing the space for, and helping set up, the lab in the Falcon Street residence. On redirect examination by the prosecutor, the following exchange occurred:
 
 
 37
 Q: Are you afraid of anything or anyone in connection with this case?
 
 
 38
 A: Yes.
 
 
 39
 Q: Why?
 
 
 40
 A: I am afraid of not being able to walk out of here.
 
 
 41
 Q: Why do you have that fear? Are you afraid of a person?
 
 
 42
 A: Yes.
 
 
 43
 Q: Who?
 
 
 44
 A: Danny Fisher.
 
 
 45
 Q: Why?
 
 
 46
 MR. BUFALINO [counsel for Silvestri]: Objection, your Honor.
 
 
 47
 Following a sidebar conference that, inexplicably, was not on the record, the prosecutor resumed questioning on another topic.
 
 
 48
 In his rebuttal closing argument, the prosecutor briefly referenced this testimony: "What did Mr. Meshinski told [sic] you? He was afraid of someone."[1] Neither defendant objected to this reference.
 
 
 49
 The actions at trial of defense counsel, the prosecutor, and the district court make this issue very difficult to review. The sidebar conference was off the record, leaving this court to guess at what motions, if any, defense counsel made and how the district court responded. We will, however, infer that the district court instructed the government to cease its line of questioning, effectively sustaining the objection.
 
 
 50
 In his submission to this court, Fisher argues that the admission of the evidence of Meshinski's fear was error because it violated Fed.R.Evid. 404(b). We note initially that, based on our review of the record, the prosecutor's redirect questions were beyond the scope of cross-examination, and, as such, the entire line of questioning was inappropriate. Fisher, however, did not object at trial on this basis, nor does he urge this argument to this court. Therefore, we consider the argument waived.
 
 
 51
 Nevertheless, as to Fisher's Rule 404(b) argument, we agree that the evidence, as adduced at trial, was inadmissible. The government relies on the proposition that evidence of an accused's threats against a witness is admissible. This court has adopted this principle, holding that threats against a witness are admissible under Rule 404(b) to show consciousness of guilt. United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir.1986), cert. denied, 480 U.S. 922 (1987).
 
 
 52
 What the government apparently does not appreciate, however, is that because of the district court's apparent decision to disallow further questioning of Meshinski on this subject, no actual evidence of any threats by Fisher was presented to the jury. Further, because the government failed to make an offer of proof, there is nothing in the record to show that Fisher ever made such threats. As a result, there is no basis in the record for admitting Meshinski's testimony. The jury did not hear testimony, admissible under Rule 404(b), about acts of Fisher that prove consciousness of guilt; instead, the jury only heard testimony about Meshinski's unexplained fear of Fisher. This testimony was inadmissible under Rule 402 because it was not relevant.[2]
 
 
 53
 The unfortunate result of the exchange was to suspend before the jury an unsupported inference that Fisher may have threatened Meshinski. The record does not reveal any basis for such an inference, and absent proof that Fisher threatened Meshinski, the testimony that Meshinski feared Fisher was inadmissible because it was irrelevant.
 
 
 54
 Our inquiry does not, however, end here. A close examination of the record reveals that Fisher failed to preserve this issue for review. We reach this conclusion for several reasons. First, we note that Fisher counsel's failed to object to the questioning of Meshinski--the only objection came from Silvestri's counsel, and the record does not reveal that Fisher joined in the objection. Second, the only objection made at trial was the single word, "Objection." The specific ground urged on appeal, violation of Rule 404(b), was not suggested to the trial court. As such, the objection fails to preserve the issue for review. Mendez-Ortiz, 810 F.2d at 78. Third, we note that not only did Fisher fail to object to the questioning of Meshinski, neither did Fisher object to the effect of the exchange, that is, the existence of a damaging inference that Fisher threatened Meshinski. The record does not reveal a request from Fisher that Meshinski's testimony be stricken, nor does the record reveal a request for a curative instruction.
 
 
 55
 As a result, we review this issue under the plain error standard of review. Although we feel that allowing the jury to hear Meshinski's testimony, and thereby inappropriately suggesting to the jury that Fisher may have entertained a consciousness of guilt, we conclude that it did not constitute plain error. To the extent that Meshinski's testimony created an inference that Fisher was conscious of his own guilt, we note that Meshinski's testimony was cumulative of testimony that Fisher attempted to bribe Thomson, demonstrating a similar consciousness. In addition, permitting the jury to hear the testimony did not "strike at the fundamental fairness" of the trial. Causey, 834 F.2d at 1281. Fisher's guilt was clear, and more than ample evidence implicated him in the amphetamine conspiracy. Meshinski's answers to a few inappropriate questions did not constitute plain error.
 
 
 56
 We reach the same conclusion as to the prosecutor's reference to Meshinski's fear during rebuttal closing argument. We note that Fisher failed to object to this reference and thus we again use the plain error standard. That fact that the jury heard the prosecutor's one-sentence reference to Meshinski's fear did not constitute plain error.
 
 D.
 
 57
 Prosecutor's Denigration of Fisher's Trial Counsel
 
 
 58
 Fisher argues second that during rebuttal closing argument, the prosecutor impermissibly suggested that defense counsel's opinion was irrelevant. In his rebuttal, the prosecutor stated to the jury: "You are the judges of credibility. What Mr. Garish [trial counsel for Fisher] thinks doesn't matter." Counsel for Fisher did not object.
 
 
 59
 Lacking an objection, we analyze the prosecutor's statement under the plain error standard. Viewed in the proper context, the prosecutor merely reminded the jury that it was the proper judge of the credibility of the witnesses. Permitting this comment was not plain error.
 
 III.
 
 60
 The convictions of Fisher and Silvestri are affirmed.
 
 
 61
 KEITH, Circuit Judge, concurring.
 
 
 62
 I concur in the majority opinion, but write separately to express my strong opposition to the prosecution's use of unsubstantiated and improper character evidence against Fisher. As the majority recognizes, Meshinski's testimony that he was afraid of Fisher was inappropriate and inadmissible. I agree, however, that the governing standard of review precludes us from reversing the district court.
 
 
 63
 I find the prosecution's use of Meshinski's testimony very troubling. While the prosecution suggested at oral argument that there was a basis for admitting this evidence, the prosecution concedes that that basis was not established at trial. The record fails to reveal the reason for this failure. In any case, questions about Meshinski's alleged fear of Fisher ceased after a sidebar conference with the district judge and, as noted by the majority, we can assume that the district court instructed the prosecution to cease its line of questioning. The prosecution, however, again referenced the unsubstantiated character evidence during closing arguments.
 
 
 64
 I find the prosecution's repeated use of this character evidence inexcusable. It is hard to believe that the prosecution was unaware that reference to the unsubstantiated character evidence during closing argument was inappropriate. The prosecution should also have been aware of the potential for prejudice from its repetitive use of this evidence. I find such action by the government to be deplorable.
 
 
 65
 Despite my misgivings in this case, defense counsel's failure to state the basis of its objection to this testimony severely limits this Court. Under the plain error standard of review and those mitigating circumstances stated by the majority, I must reluctantly join in the majority decision to AFFIRM.
 
 
 
 [1]
 The reporter noted that as the prosecutor said this, he was "Indicating the Defendants."
 
 
 [2]
 Rule 404(b), technically speaking, is not at issue, since the government did not adduce any evidence about crimes, wrongs, or acts of Fisher