**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0236n.06
Filed: May 5, 2008

No. 07-5434

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| TEDDY RAY MANNS, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

---

Before:  MOORE and CLAY, Circuit Judges; and SCHWARZER,[*] District Judge.

KAREN NELSON MOORE, Circuit Judge.  Teddy Ray Manns ("Manns"), Defendant-

Appellant in this case, appeals his convictions for distribution of controlled substances and for

conspiracy with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and

21 U.S.C. § 846, as well as his sentence of 276 months in prison.  Manns makes three arguments

before this court:  1) that his convictions should be reversed because the district court abused its

discretion in allowing the testimony of Manns's cellmate regarding Manns's alleged threat against

the lives of his co-defendants; 2) that his convictions should be reversed because of insufficiency of

the evidence; and 3) that his sentence should be vacated because the district court erred when it

---

[*]The Honorable William W Schwarzer, United States District Judge for the Northern District
of California, sitting by designation.

found that Manns conspired to distribute at least 1000 kilograms of marijuana. For the reasons explained below, we **AFFIRM** Manns's convictions and sentence.

## I. FACTS AND PROCEDURE

On February 3, 2006, a grand jury indicted Manns on twenty-three counts of violation of §§ 841(a)(1) and 846 and on one count seeking forfeiture pursuant to 21 U.S.C. § 853. On August 3, 2006, a grand jury charged Manns in a superseding indictment. Count 1 charged Manns with conspiring to distribute 1000 kilograms or more of marijuana in violation of § 846; Count 2 charged Manns with conspiracy to distribute Oxycontin in violation of § 846; Counts 3 through 15 charged Manns with distribution of marijuana, cocaine, Oxycontin, and Lorcet pills containing hydrocodone on various dates between February and April 2005, in violation of § 841(a)(1); Count 16 charged Manns with growing fifty or more marijuana plants in June 2004 in violation of § 841(a)(1); Count 17 charged Manns with growing fifty or more marijuana plants in April 2005 in violation of § 841(a)(1); and Count 18 charged Manns with the use of currency, vehicles, and firearms in the commission of the aforesaid crimes and sought forfeiture of the property.

Prior to trial, Manns filed a motion in limine "to exclude any evidence that he allegedly made threats regarding witnesses who may testify against him." Joint Appendix ("J.A.") at 71 (Motion in Limine). The district court denied the motion on the ground that the alleged threat constituted spoliation evidence, "probative of consciousness of guilt." J.A. at 76 (10/25/06 Order at 1).

On October 25, 2006, the district court dismissed Counts 3, 8, and 16, by government motion. The court later also dismissed Count 14 by government motion.

The trial took place on November 6 through November 8, 2006. The prosecution's theory of the case was that Manns operated an illegal drug business, aided and abetted by Kristy Tackett

2

("Tackett") who lived with him and with whom he had a child. Clarence "Rooster" Roberts ("Roberts") was one of Manns's major clients, who in turn resold the drugs he purchased from Manns. In addition to the testimony by co-defendants Tackett and Roberts, the government's case relied upon testimony by detective Virgil Ray ("Ray") and by Will Chaney ("Chaney"), a confidential informant who made controlled drug purchases that the police recorded.

With respect to Count 1 regarding a conspiracy to distribute marijuana, Roberts testified about how he came to form a drug partnership with Manns: Manns fronted Roberts marijuana that he then sold, returning a portion of the profit to Manns. Roberts testified that he received "at least 50" pounds of marijuana each week from Manns between 2003 and 2005. J.A. at 164 (Trial Tr. Vol. 3: 22). Roberts further testified that the marijuana discovered at his house when the police executed a search warrant came from Manns. Tackett testified that she lived with Manns and sold drugs that he supplied to individuals including Chaney, returning all the money to Manns. Tackett testified that at the time she was arrested, Manns probably had about $350,000 in drug profits then available to him. Tackett explained that she helped Manns count drug money ranging in amounts from $20,000 to $50,000 and break marijuana quantities into one-pound baggies. According to Tackett, Manns received deliveries of "100 to 300 pounds [of marijuana], at least every two to three weeks." J.A. at 178 (Trial Tr. Vol. 3: 40).

With respect to Count 2 regarding the conspiracy to distribute Oxycontin, Roberts testified that he received from Manns about fifty to one-hundred Oxycontin pills every one to two weeks.

Roberts, Tackett, Ray, and Chaney testified regarding the counts of drug distribution and manufacture. With respect to Count 4, Tackett testified that she sold Chaney fifty-one Oxycontins, including one for herself, and took the money back to Manns. Chaney also testified that the

3

transaction took place at a rooster fight and that Tackett had told him that Manns was the source of the supply for the pills. With respect to Counts 5 and 6, Chaney testified that a telephone conversation recorded by the police revealed him talking with Tackett about a transaction involving 50 Oxycontin 80-milligram tablets and four pounds of marijuana. Chaney testified that a video accurately depicted Tackett placing four pounds of marijuana in his car on March 21, 2005. Tackett also testified that she sold Chaney marijuana in chicken feed bags. With respect to Count 7, Tackett testified that Manns sent her to sell seventy-five pounds of marijuana to Roberts. Chaney explained that a video recording depicted a "rooster feed bag containing 12 one-pound bags of marijuana." J.A. at 131 (Trial Tr. Vol. 2: 62). With respect to Counts 9 and 10, Roberts testified that when he was arrested he had in his truck fifty pounds of marijuana and twenty-two Oxycontin 80-milligram pills, which he had purchased from Manns at a McDonald's in Salyersville. Ray testified that he had conducted surveillance on March 29, 2005, and witnessed Roberts at a McDonald's parking lot in Salyersville taking a black garbage bag out of the back of Manns's vehicle and placing it in his own truck. With respect to Counts 11 and 12, Chaney testified regarding his purchase of half an ounce of cocaine directly from Manns and his regular purchases of pain pills containing hydrocodone from Manns. The evidence regarding Count 13 consists of statements at trial regarding a videotape recording of a drug transaction that took place on April 12, 2005. With respect to Count 15, Chaney testified regarding a scheme involving the purchase of Oxycontin from Manns and the use of the money to obtain bail for Tackett. With respect to Count 17 regarding the growing of marijuana plants, Ray identified Government Exhibit 26 as the fifty-three marijuana plants seized from Manns's residence.

Steven Ryan Tackett, a cousin of Tackett's ex-husband and Manns's cellmate in a maximum-security prison, also testified at trial that Manns offered him $10,000 to murder either Tackett or Roberts and $20,000 to kill them both. The district judge instructed the jury:

> You've also heard the testimony of Steven Tackett, that after the crime was supposed to have been committed the defendant attempted to have Kristy Coleman Tackett and Clarence Roberts murdered.
> If you believe that the defendant attempted to have Kristy Coleman Tackett and Clarence Roberts murdered, then you may consider this conduct along with all of the other evidence in deciding whether the government has proved beyond a reasonable doubt that Mr. Manns committed the crime charged. This conduct may indicate that he thought he was guilty and was trying to avoid punishment.

J.A. at 204 (Trial Tr. Vol. 3-203).

In submitting the case to the jury, the district court rejected the motion made by Manns's attorney, at the close of the government's proof, for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). Manns's attorney had argued that:

> even based on the light most favorable to the United States . . . a reasonable jury could not return a verdict of guilty on this proof because there's not been proof beyond a reasonable doubt, in that the proof is those were transactions that were engaged in between Kristy Tackett and the informant, Will Chaney. There was no evidence presented that Mr. Manns was involved or present for any of these transactions.

J.A. at 201 (Trial Tr. Vol. 3-124). Manns's attorney further argued that the cocaine distribution charges depended on the testimony of Chaney, who did not have sufficient credibility to justify submitting the evidence to the jury. Manns's attorney argued that insufficient evidence existed to show that the marijuana plants seized belonged to Manns. Finally, Manns's attorney argued:

> With regards to Counts 1 and 2, because to some extent the evidence on those rises and falls with regard to the other counts in the indictment because of the issues that were raised with regard to the witnesses on those counts, I think that the proof, even in the light most favorable to the government, would not allow the Court to submit those charges to the jury.

5

*Id*. at 202 (Trial Tr. Vol. 3-125).

Following trial, on November 8, 2006, a jury convicted Manns on Counts 1, 2, 4, 5, 6, 7, 9, 10, 11, 12, 13, 15, and 17. The district court sentenced Manns to 276 months of imprisonment, ten years of supervised release, a $1300 assessment, and a $250,000 fine.[1] Manns filed a timely notice of appeal.

## II. ANALYSIS

As an initial matter, before addressing Manns's arguments challenging his convictions and sentence, we must consider whether the district court had authority to amend the original judgment. The district judge filed an amended judgment to correct a clerical error regarding the duration of Manns's terms of imprisonment on Counts 1, 2, 4, 6, 10, 11, 13, 15, and 17. Because the district court filed the amended judgment on May 23, almost two months after delivering the oral sentence on March 26, the district court did not possess authority pursuant to Federal Rule of Criminal Procedure 35.[2]

---

[1]The judgment filed on March 27, 2007 contained an error. The judgment sentenced Manns to a term of imprisonment of "276 months consisting of 300 months on each count 1s, 2s, 4s, 6s, 10s, 11s, 13s, 15s & 17s, and 120 months on each of counts 5s, 7s, 9s & 12s, with all terms to run concurrently for a total of 276 months." J.A. at 62 (Judgment at 3). On May 23, the district court filed an amended judgment citing the correction of a clerical mistake pursuant to Federal Rule of Criminal Procedure 36, as the reason for the amendment. Dist Ct. Record # 170 at 1 (Am. J. at 1). The amended judgment sentenced Manns to a term of imprisonment of "276 months consisting of 276 months on each count 1s, 2s, 4s, 6s, 10s, 11s, 13s, 15s & 17s, and 120 months on each of counts 5s, 7s, 9s & 12s, with all terms to run concurrently for a total of 276 months." Dist Ct. Record # 170 at 3 (Am. J. at 3).

[2]Rule 35 provides that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." FED. R. CRIM. P. 35(a). Rule 35 defines "sentencing" as "the oral announcement of the sentence." FED. R. CRIM. P. 35(c).

Instead, the district court asserted authority to amend the judgment pursuant to Federal Rule of Criminal Procedure 36. Rule 36 provides that the district court, after giving appropriate notice, "may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." FED. R. CRIM. P. 36. "A clerical error must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004) (quotation omitted). In this case, the district court's original written judgment sentenced Manns to a total of 276 months in prison but erred in stating that this total term included concurrent sentences of 300 months imprisonment on specified individual counts. The district court, however, never made a mistake regarding the total term of imprisonment. We view the mistake regarding the concurrent terms of imprisonment on the specified individual counts, which the district court later corrected in the amended judgment, as the kind of mechanical, clerical mistake that an amanuensis might commit. We therefore hold that the district court possessed authority to amend the judgment pursuant to Federal Rule of Criminal Procedure 36.

**A. Denial of Motion for Judgment of Acquittal Pursuant to Rule 29(a)**

We review de novo the district court's decision to deny Manns's motion for judgment of acquittal. *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "A defendant making such a challenge bears a very heavy burden." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir.), *cert. denied*, 528 U.S. 1033 (1999).

To prove participation in a drug conspiracy in violation of § 846, the government must establish "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996), *cert. denied*, 519 U.S. 1134 (1997). The elements of conspiracy include: "(1) An object to be accomplished. (2) A plan or scheme embodying means to accomplish that object. (3) An agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object . . . ." *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir.), *cert. denied*, 528 U.S. 1051 (1999). To prove knowing and intentional distribution of a controlled substance in violation of § 841(a)(1), the prosecution must prove general criminal intent showing "the possessor's awareness that he is in possession of a controlled substance" as well as "the specific 'intent to distribute.'" *Id.* at 433 (quotations omitted). To prove manufacture of marijuana in violation of § 841(a)(1), the prosecution need only establish that the defendant was growing marijuana and not that he also intended to distribute the marijuana. *United States v. Miller*, 870 F.2d 1067, 1071-72 (6th Cir. 1989).

Manns argues that the evidence is insufficient "to establish that [he] was involved in a conspiracy to distribute more than 1,000 kilograms of marijuana, Count 1, or that [he] was involved in any specific drug distribution, Counts 4, 6, 10, 13, and 15." Defendant-Appellant Br. at 12. Specifically, Manns argues that the government could not produce any direct evidence showing Manns involved in drug transactions but rather produced evidence solely relating to transactions between Tackett and Chaney.[3] We conclude, however, that Manns's arguments must fail because

---

[3]The government argues that Manns has waived his right to challenge the denial of his motion for judgment of acquittal for all counts but Count 1. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v.*

8

the prosecution can establish a conviction based solely on circumstantial evidence, and "uncorroborated testimony of an accomplice may support a conviction in federal court." *Spearman*, 186 F.3d at 746. Tackett, Roberts, and Chaney all testified extensively regarding Manns's numerous sales of large quantities of marijuana, Oxycontin, cocaine, and hydrocodone.

Furthermore, Manns's claim of insufficient evidence regarding Count 1 is limited to a challenge to witness credibility. In making a Rule 29(a) motion at the close of the government's evidence, Manns's attorney argued that because "to some extent" the evidence regarding Count 1"rises and falls with regard to the other counts in the indictment because of the issues that were raised with regard to the witnesses on those counts . . . the proof . . . would not allow the Court to submit those charges to the jury." J.A. at 202 (Trial Tr. Vol. 3-125). "Although specificity of grounds is not required in a Rule 29 motion . . . where a Rule 29 motion is made on specific grounds, all grounds not specified are waived." *United States v. Dandy*, 998 F.2d 1344, 1356-57 (6th Cir. 1993), *cert. denied*, 510 U.S. 1163 (1994). Here, Manns's attorney specified that the incredibility of the witnesses formed the grounds for the Rule 29 motion regarding Count 1, and did not specify any other basis for the motion on this count.

Credibility challenges, however, speak "to the *quality* of the government's evidence and not to the sufficiency of the evidence." *United States v. Farley*, 2 F.3d 645, 652 (6th Cir.), *cert. denied*, 510 U.S. 1030 (1993). "[D]etermining the credibility of witnesses is a task for the jury, not this court." *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir.), *cert. denied*, 543 U.S. 910 (2004). Although "exceptional circumstances" may warrant the trial judge assuming the function of

*Layne*, 192 F.3d 556, 596-97 (6th Cir. 1999), *cert. denied*, 529 U.S. 1029 (2000). While Manns's arguments in support of his insufficient-evidence claim are weak, they are not raised in such a perfunctory manner as to warrant deeming them waived.

credibility assessment normally reserved for the jury, *Farley*, 2 F.3d at 652, there is nothing to suggest that such circumstances exist in this case. "[I]n reviewing a defendant's claim of insufficiency, we draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998), *cert. denied*, 525 U.S. 1184 (1999). As a result, a defendant's "attack on the credibility of prosecution witnesses gets her [or him] nowhere." *Id.* In sum, we conclude that the district court did not err when it denied Manns's Rule 29 motion, and we decline to reverse Manns's convictions on the basis of insufficient evidence.

## B. Testimony of Steven Tackett

Manns argues that the district court erred when it admitted testimony by Steven Tackett regarding Manns's alleged threats against the lives of Tackett and Roberts. We apply a tripartite standard in reviewing the district court's decision to admit evidence of "other acts" under Federal Rule of Evidence 404(b). We review for clear error the district court's factual determination that "other acts" occurred; we review de novo the legal determination that there were legitimate reasons to admit the evidence; and we review for abuse of discretion the "determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect." *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996). "In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving 'the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988) (quoting 1 J. WEINSTEIN & M. BERGER, *Weinstein's Evidence* ¶ 403 [at 3] (1982)).

We find unconvincing Manns's arguments that his alleged statement to Steven Tackett does not constitute admissible spoliation evidence and that its unfair prejudicial impact outweighed its probative value. "Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003) (quoting BLACK'S L. DICT. 1401 (6th ed. 1990)). In *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986), *cert. denied*, 480 U.S. 922 (1987), we held that "[t]hough not listed in Rule 404(b), spoliation evidence, including evidence that defendant attempted to . . . threaten[] a witness, is admissible to show consciousness of guilt."[4] *Id.* Since *Mendez-Ortiz*, we have reiterated that spoliation evidence regarding the defendant's threats to witnesses is admissible. *See United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006), *cert. denied*, --- U.S. ---, 127 S. Ct. 1336 (2007); *Copeland*, 321 F.3d at 597; *United States v. Fortson*, 194 F.3d 730, 737 (6th Cir. 1999); *United States v. Maddox*, 944 F.2d 1223, 1230 (6th Cir. 1991), *cert. denied*, 504 U.S. 961 (1992).

Manns argues that the cases affirming the admission of evidence respecting threats to witnesses are distinguishable because in those cases the defendants made threatening statements directly to witnesses whereas in the instant case Manns communicated the threat to his cellmate. This is a strained argument. In *Copeland*, the spoliation evidence at issue involved a statement by the defendants' cellmate that he had overheard the defendants discussing plans to hire someone to harm the Assistant United States Attorney. 321 F.3d at 597. Our conclusion that the district court

---

[4]The *Mendez-Ortiz* panel was conducting plain-error review because the defendant had not raised Rule 404(b) at trial. 810 F.2d at 78. While the different standard of review applied in that case would diminish the precedential value of the *Mendez-Ortiz* panel's holding that the probative value of the statements outweighed their unfair prejudicial impact, the standard does not diminish the precedential value of the general holding that similar threats speak to consciousness of guilt.

erred in admitting the evidence derived from the fact that the threat related to an attorney and not from the fact that the defendant had not made the threat directly to its subject. We held that "threats against a prosecutor do not imply a defendant's intention to destroy evidence" because a prosecutor does not testify and, thus, that such threats do not satisfy the spoliation evidence admissible pursuant to Rule 404(b). *Id.* at 598. By contrast, Manns's statement to his cellmate demonstrated his intent to destroy the evidence unfavorable to him (Tackett and Roberts's testimony) and thus satisfies the definition of spoliation evidence. Furthermore, in an unpublished opinion we have affirmed the admission of spoliation evidence regarding statements a defendant made to his former cellmate about hiring someone to murder his co-defendant. *United States v. Hanson*, 208 F.3d 215, No. 98-6164, 2000 WL 125863, at *1-*2 (6th Cir. Jan. 25, 2000) (unpublished), *cert. denied*, 530 U.S. 1210 (2000). Indeed, in *Hanson*, the defendant did not propose to hire his cellmate directly but merely talked about hiring another party, and thus the threat was one more step removed from the witness than in the instant case. In conclusion, we view Manns's attempts to distinguish our caselaw regarding spoliation unpersuasive and hold that his alleged statement to Steven Tackett constituted spoliation evidence admissible under Rule 404(b).

Manns further argues that the prejudicial effect of the statement outweighed its probative value and thus that the district court should have excluded the evidence pursuant to Federal Rule of Evidence 403. Specifically, Manns contends that the statements might have shown only that Manns wanted revenge on Tackett and Roberts for untruthfully implicating him in their criminal scheme. Taking the evidence of the threats in the light most favorable to the prosecution and assuming its maximum probative value, however, we concur with the district court that the evidence's probative value clearly outweighs its unfair prejudicial effects. A rational factfinder could conclude that the

12

threats constituted evidence of consciousness of guilt rather than revenge for untruthful testimony. Given this conclusion, the prejudicial effect of the statements on Manns's case would be justified rather than unfair. We therefore conclude that the district court did not abuse its discretion when it determined that the probative value of evidence of Manns's statements to Steven Tackett outweighed any asserted unfair prejudicial value.

## C. Calculation of Marijuana Quantity in Sentencing

Manns contends that his sentence should be vacated because the district court erred by finding that Manns conspired to distribute "at least" 1,000 kilograms of marijuana. J.A. at 209 (Sent. Hr'g Tr. at 6). We review the district court's factual findings for clear error. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005).

Manns argues that the district court improperly relied on the testimony of Roberts for the calculation when other portions of Roberts's testimony were not credible. Manns's argument is foreclosed because the district court based its sentence respecting Count 1 on the same quantity of drugs that the jury concluded Manns was guilty of conspiring to distribute. "The district court cannot ignore the jury's findings as to drug quantity unless there is insufficient evidence to support those findings." *United States v. Ricketts*, 317 F.3d 540, 545 (6th Cir.), *cert. denied*, 539 U.S. 935 (2003). Because sufficient evidence existed for a rational factfinder to convict Manns on Count 1, the district court properly found that Manns entered a conspiracy with intent to distribute at least 1,000 kilograms of marijuana.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Manns's convictions and sentence.

13