NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0075n.06

Case No. 16-1188

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 26, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| BRANDEN BARNES, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant | ) | |
| | ) | **OPINION** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: NORRIS, GIBBONS, and ROGERS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant Branden Barnes was charged with manufacturing more than fifty marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count I). He was also charged with maintaining a drug-involved premises, in violation of 21 U.S.C. §§ 856(1) and 856(b) (Count II). Barnes moved to dismiss the indictment, arguing that he had the right to manufacture marijuana under the First Amendment and the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq*, due to his membership in the Oklevueha Native American Church, which he joined in 2014. The district court denied Barnes's motion, and he entered a conditional plea on Count I, preserving his right

to appeal his RFRA arguments. Count II was dismissed. He was sentenced to 18 months' imprisonment.

Barnes appeals the denial of his motion to dismiss the indictment, as well as the district court's rejection of his motion to present a RFRA defense at trial. He also appeals his sentence, arguing that marijuana should be rescheduled from a Schedule I to a Schedule III drug and that he should be resentenced accordingly. For the reasons that follow, we affirm Barnes's conviction and sentence.

I.

Branden Barnes, 33, has a long relationship with marijuana use, beginning as far back as age 14. He is an advocate of medical marijuana use and has frequently used marijuana for medical, as well as recreational, purposes. Barnes is currently a member of the Oklevueha Native American Church ("ONAC"). Barnes is not Native American but cites as his epiphany an encounter with the ONAC when he was visiting a friend in the hospital in December 2013. Barnes recounts that his friend was inexplicably cured after ONAC members performed a healing ritual on her. Barnes then researched the ONAC on the internet, and in April 2014, he reached out to become a member of the Church of Anyana-Kai, a Toledo, Ohio-based branch of the national ONAC.

Becoming a member of the ONAC was quite simple: Barnes smoked marijuana, paid $25 to get his membership card for the Toledo church, and made a $200 donation to the national church in order to possess "sacraments." This April 2014 encounter was the first interaction he had with any member of the Church of Anyana-Kai since the hospital visit. Barnes walked away with a card certifying that he was an "Authorized Participant Member of the Oklevueha Native American Church of Anyana-Kai" and authorized to have "in his possession . . . Native

American sacrament." The process to join the church and convince it of his sincerity took 15 minutes.

Barnes was impressed with ONAC's concept of "Grandmother Earth and Grandfather Sky and their descendants," but admitted that this philosophy was never mentioned on the website for the Church of Anyana-Kai. Because he did not have a driver's license due to substance abuse issues, he was unable to visit the Toledo church often. In fact, he made only two visits to the Church of Anyana-Kai between April and November 2014.

Instead, within two months of receiving his general membership card, Barnes and two other members of the "Mother Church" decided to start a local church in Michigan, where there were no existing ONAC branches. This process involved a $7,000 donation to the "Mother Church" to cover "legal expenses . . . [and] outreach programs" and in exchange Barnes received a special blessing and a starter kit. Barnes testified that this was the beginning of a "three and a half year process of becoming a naturopathic doctor . . . so that [he could] . . . conduct the ceremonies." He was not certified to be a medicine man of the ONAC at any time. Barnes testified that he did not establish a physical place of worship for the local Michigan branch because "[w]ith [ONAC] spirituality, the place of worship is all of Mother Earth . . . . [O]ur church [is] everywhere we go."

The ONAC's national website states that: "If you desire to be blessed by having access to Native American Ceremonies and Medicines (such as Peyote, San Pedro, Ayahuasca and Cannabis) without legal interference, you will want to consider joining Oklevueha NAC and connecting with our medicine people." Another page of the ONAC website states:

3

WHY BEING A MEMBER OF OKLEVUEHA NATIVE AMERICAN
CHURCH WILL BENEFIT YOU

> An "Oklevueha Native American Church Membership Card" serves to protect the sacred use and transportation of ONAC sacraments, which the federal government and a majority of state governments still declare are illegal under any other situation.
>
> An Oklevueha Native American Church Membership Card is documented evidence that ONAC Membership Card holder has a proven sincerity standard (level) that qualifies he or she for all exceptions to the controlled substance laws of the United States, providing they are not in violation of any aspect of Oklevueha Native American Church – Code of Ethics.

Barnes described several ceremonies of the ONAC, most of which do not use marijuana. Likewise, nowhere is marijuana listed as a "sacrament" of the Church of Anyana-Kai. Barnes gained familiarity with the ONAC ceremonies through his three in-person visits to the Church of Anyana-Kai and Anyana-Kai's website. Many of the ceremonies described on the website track medical procedures, such as the "Ceremonial Colonic," described as "[s]imilar to a liquid enema." Other ceremonies include the "Great Breath Ceremony," which involves breathing techniques, the "Blanket Ceremony," which is similar to a marriage ceremony; and the "Peyote Ceremony," about which Barnes admittedly knew little. The only ceremony to include marijuana is the "Pipe Ceremony," which is a ceremony that Barnes participated so that he could join the Church of Anyana-Kai. But ONAC does not include marijuana as a "sacrament" on its website; instead, it expressly states that "[p]eyote is the only Great Spirit gifted plant that Oklevueha Native American Church utilizes for its Sacrament and/or Eucharist Ceremony."

Much of Barnes's religion was left up to his own personal belief system. After joining, Barnes decided that, as part of his faith, he would perform charitable acts by growing marijuana in large quantities to donate to the Toledo church. Yet, Barnes testified that his religion did not require that he grow and donate marijuana. This was his personal choice, and he could have

4

made a charitable donation that did not involve marijuana. Barnes testified that there was no special ceremony involved in planting, growing, and harvesting marijuana, but that he "[said] a prayer every time [he planted it]." He did not attempt to have either property on which he grew marijuana legally recognized as church property.

Barnes began the process of growing sizable quantities of marijuana in his home around June 2014. On November 6, 2014, the Lansing, Michigan Fire Department ("LFD") responded to a gas leak and electrical fire at 712 Johnson Avenue. At the scene, LFD discovered more than two pounds of processed marijuana and 321 marijuana plants within the house. There was little to no personal property in the house, and the windows were blacked out to assist grow lamps. Barnes admitted that he was growing the marijuana in his house in order to donate it to the ONAC. Barnes insisted that, because he had an ONAC membership card, he was able to grow as many plants as he wanted, without any restrictions.

Troopers also were dispatched on April 28, 2015, to another of Barnes's homes at 20770 21½ Mile Road in Marshall, Michigan. There, law enforcement officers found butane hash oil, 71 marijuana plants, 30.3 grams of loose marijuana, and 140.8 grams of processed marijuana. Again, Barnes told law enforcement that he was growing marijuana in his home under a religious exemption from the ONAC.

Barnes was charged in a two-count indictment on April 16, 2015. Count I charged Barnes with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) by manufacturing more than fifty marijuana plants. Count II charged him with maintaining a drug-involved premises, in violation of 21 U.S.C. §§ 856(a)(1) and 856(b). Barnes moved to dismiss the indictment, arguing that, under the Religious Freedom Restoration Act of 1993 ("RFRA"), he had the right to manufacture these marijuana plants as part of his First Amendment right to free exercise of religion.

The district court held a hearing on Barnes's motion to dismiss, at which Barnes was the sole witness. At the conclusion of the hearing, the court denied Barnes's motion because he failed to establish his RFRA claim. In its ruling, the district court noted that Barnes's testimony acknowledged that growing large quantities of marijuana was not required by his religion, nor was it central to the faith. It further found that little evidence supported a conclusion that Barnes's ability to practice his religion under the RFRA is burdened, let alone substantially burdened. The court emphasized the government's interest in the regulation of marijuana, and that—while "changing attitudes about marijuana use in this country . . . are really all over the map right now"—there was not significant evidence to undermine this government interest.

On October 20, 2015, Barnes pled guilty to Count I of the indictment, but preserved the right to appeal the denial of his motion to dismiss the indictment. Count II was dismissed. Barnes was sentenced on January 28, 2016, to 18 months' imprisonment. Barnes now appeals his conviction and sentence.

## II.

We review the district court's denial of a motion to dismiss the indictment *de novo*. *United States v. Johnson*, 765 F.3d 644, 646 (6th Cir. 2014) (noting that this court engages in clear error review for findings of fact, but reviews conclusions of law *de novo*); *United States v. Ali*, 557 F.3d 715, 720 (6th Cir. 2009). "Whether a defendant has established a *prima facie* case [establishing a valid defense] is a question of law" we also review *de novo*. *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005).

## A.

Barnes's first claim is based on the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.* RFRA explicitly stated that it was re-establishing the

*Wisconsin v. Yoder* framework for analyzing religious exemptions. Analysis of a RFRA claim under the *Yoder* "compelling interest" test seeks to prevent defendants from being "brand[ed] . . . as criminal for following their religious beliefs." *See Wisconsin v. Yoder*, 406 U.S. 205, 237 (1972) (Stewart, J., concurring) (overruled in *Emp't Div. v. Smith*, 494 U.S. 872 (1990)). *See* 42 U.S.C. § 2000bb *et seq.* Barnes argues that the Controlled Substances Act ("CSA") substantially burdens his ability to practice his religion as a member of the ONAC. In order to prevail under RFRA, a defendant must demonstrate that the "governmental action . . . (1) substantially burden[s], (2) a religious belief rather than a philosophy or way of life, (3) which belief is sincerely held." *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010) (internal quotation omitted). Once a defendant makes a successful showing under RFRA, the burden shifts to the government to demonstrate that the substantial burden on a defendant's exercise of religion (1) furthers a compelling governmental interest, and (2) is the least restrictive means of doing so. *See* 42 U.S.C. § 2000bb–1(b)(1)–(2). Should the government be unable to meet this burden, the defendant is entitled to a religious exemption under RFRA. *Id.* Based on the evidence put forth, Barnes has not successfully made out a RFRA defense and therefore is not entitled to a religious exemption for manufacturing marijuana.

First, and most critical to disposing of his RFRA claim, Barnes did not make an adequate showing that the CSA substantially burdened his practice of religion. Barnes admitted that growing marijuana and donating it to the church is not required by his religion. Marijuana is described as a medicine within the Church of Anyana-Kai, not as a "sacrament" of the ONAC faith. Thus, while marijuana is considered a medicine of the church, it is not an essential sacrament of the faith, nor does it play a role in any of the ceremonies of the church, save one.

7

Peyote, by contrast, is the only "sacrament" of the church. Barnes did not provide any historical evidence that the manufacturing of marijuana is central to the ONAC religion specifically, or to Native American religion in general.

All of the evidence presented by Barnes points to a conclusion that manufacturing marijuana and intending to donate it to the Toledo church was a "personal belief" and a choice that he made, not one that was critical to practicing the ONAC faith. While Barnes is correct that it is not the place of the court to decide the "centrality of . . . beliefs to canonical texts," that does not prevent this court from determining whether a particular practice is required by a religion as a part of the substantial-burden analysis, which asks whether precluding a practice through the application of a law would place a substantial burden on practicing the religion. *See Haight v. Thompson*, 763 F.3d 554, 567 (6th Cir. 2014) (internal citations omitted). Barnes offered no evidence that being unable to manufacture marijuana would make him unable to practice his religion, or that he would be forced to choose between obeying the law and practicing his religion.

A recent Ninth Circuit case supports the conclusion that ONAC members are not exempt under RFRA to manufacture marijuana. *See Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1017 (9th Cir. 2016). In that case, the Ninth Circuit was "skeptical" that the ONAC's marijuana use amounted to an exercise of religion. *Id.* at 1015–16. Even assuming that it qualified, there was insufficient evidence to conclude that prohibiting marijuana imposed a "substantial burden" under RFRA. *Id.*

> Oklevueha state[s] in no uncertain terms that "Peyote is the significant sacrament," and that they consume cannabis only "in addition to and in . . . substitute for their primary entheogenic sacrament, Peyote." They make no claim that peyote is unavailable or that cannabis serves a unique religious function. What is more, their certified complaint states that Oklevueha "honors and embraces all entheogenic naturally occurring substances,

> including Ayahuasca, Cannabis . . . and many others." Put simply, nothing the record demonstrates that a prohibition on cannabis forces [Oklevueha members] to choose between obedience to their religion and criminal sanction, such that they are being "coerced to act contrary to their religious beliefs."

*Id.* at 1016 (quoting *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1070 (9th Cir. 2008)). Likewise, Barnes does not present evidence that preventing his manufacture of marijuana presents him with a choice between following his religion and following the law.

Likewise, Oklevueha's admission that marijuana is merely a substitute for peyote also distinguishes Barnes's case from *Holt v. Hobbs*, ___ U.S. ___, 135 S. Ct. 853 (2015). In *Holt*, the Supreme Court found that the Religious Land Use and Institutionalized Persons Act ("PLUIPA"), 42 U.S.C. § 2000cc *et seq.*, the "sister statute" to RFRA, required a prison to grant a Muslim inmate a religious exemption to grow a half-inch beard. *Id.* at 859. The district court had held that the inmate's religion was not substantially burdened by the prison's grooming policy because the inmate was able to engage in "other forms of religious exercise," such as use of a prayer rug, distribution of Islamic material, and observation of religious holidays. *Id.* at 862. The Court rejected that conclusion, reasoning that the prison's refusal to allow the inmate to grow a beard still forced him to choose between "engag[ing] in conduct that seriously violates [his] religious beliefs" or "fac[ing] serious disciplinary action." *Id.* at 862 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. ___, 134 S. Ct. 2751, 2775 (2014)). By contrast, Barnes has produced no evidence that denying him marijuana forces him to choose between religious obedience and government sanction, since his religion states in no uncertain terms that many other substances, including peyote, are capable of serving the exact same religious function as marijuana.

If Barnes provided no evidence that growing and donating marijuana is part of the ONAC religion, then it logically follows that precluding Barnes from doing so cannot substantially burden the practice of that religion. He made no argument that, without manufacturing marijuana in large quantities to donate to the Toledo church, he would be unable to practice his religion. He was not faced with a choice between the law and his religion. He did not even truly argue that this regulation was a substantial burden—his argument hinged almost exclusively on the idea that because the ONAC deemed marijuana to be a medicine and issued him a membership card, he was able to grow as much marijuana as he wanted without any restriction.

Moreover, Barnes cannot meet the second prong of a RFRA-based exemption: that the belief is a religious one, and not a personal belief or philosophy. By Barnes's own admission, his religion did not require him to produce marijuana in large quantities or to donate that marijuana to the church. There is ample evidence in the record to support a conclusion that Barnes's belief in marijuana was primarily a personal one, and to suggest that he was using the ONAC as a means of protection from criminal sanctions. His long history of marijuana use, his quick epiphany and conversion to the Church of Anyana-Kai, the absence of marijuana from the list of sacraments of the ONAC religion, and Barnes's admission that marijuana was not a necessary part of his religion and that he was not required to make a donation of marijuana to the church all support a finding that Barnes's actions were, in fact, based on his own personal belief or philosophy regarding marijuana.

B.

Barnes also challenges the district court's denial of his motion, in the alternative, to present a RFRA-based defense at trial. The district court concluded that the defense was irrelevant because RFRA did not authorize Barnes to manufacture marijuana.

10

Barnes is charged with a general-intent crime, the manufacture of marijuana. *See, e.g.*, *United States v. Manns*, 277 F. App'x 551, 556–57 (6th Cir. 2008) (manufacture of marijuana is a general-intent crime); *United States v. Miller*, 870 F.2d 1067, 1071–72 (6th Cir. 1989). General-intent crimes require that a defendant "knowingly" committed the criminal act. This intent requirement goes to whether the defendant knew he was engaging in the act, not whether the defendant knew that his actions were illegal. Ignorance of the law is no defense to a general-intent crime. *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994); *United States v. Kimes*, 246 F.3d 800, 806–07 (6th Cir. 2001). The defendant's good-faith belief in the legality of his conduct cannot negate an element of the charges. *See Bryan v. United States*, 524 U.S. 184, 193 (1998) ("knowingly" merely requires proof of knowledge of the facts that constitute the offense, not knowledge that they were illegal).

Under the Federal Rules of Evidence, a party is not entitled to present evidence at trial that is not relevant. Fed. R. Evid. 402. Relevancy determinations are within the district court's discretion, and evidence that neither negates an element of the crime charged nor establishes a defense is not relevant. *See id.* Because the manufacture of marijuana is a general-intent crime, and ignorance of the law is not a defense, evidence that Barnes believed he could manufacture large quantities of marijuana in his home for the ONAC, pursuant to a RFRA exemption, is irrelevant.

Barnes argues that he had an "innocent reason" that allows him to present a RFRA defense at trial. He bases his argument on language that "[a]n act is done knowingly if done voluntarily and intentionally and not because of mistake or accident or other innocent reason." *United States v. Ausmus*, 774 F.2d 722, 726 (6th Cir. 1985). While Barnes does not misquote this language, he does miss the point of that language in this circuit. Barnes argues that he

11

should be able to present his "innocent reason" that he believed he could grow marijuana based on a RFRA exemption. However, all that this language does is ensure that an individual cannot be convicted of a general-intent crime when he did not know that he committed the underlying act itself. For example, Barnes does not argue that he thought he was growing large amounts of basil. Had he thought he was growing basil, but mistakenly grew marijuana, he could potentially mount a defense to this crime. But he *knew* he was growing marijuana—and that knowledge is the only knowledge required to convict him under the statute.

## III.

Barnes's final argument—that this court should reschedule marijuana from a Schedule I to a Schedule III controlled substance, reverse his sentence, and remand to resentence him—was waived by entry of his conditional guilty plea.

Barnes did not raise this issue in the district court, nor did he preserve the right to raise it in his conditional plea agreement. Based on Rule 11(a)(2) and the law of this circuit, entry of Barnes's guilty plea triggered waiver. *United States v. Mendez-Santana*, 645 F.3d 822, 828 (6th Cir. 2011); *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001).

Conditional guilty pleas are authorized by Fed. R. Crim. P. 11(a)(2), which states that, "[w]ith the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty . . . reserving in writing the right, on appeal from the judgment, to review the adverse determination of any specified pretrial motion." This court, in following Rule 11(a)(2), has placed particular emphasis on the language that the "specified pretrial motion" that the parties agree may be appealed must be "reserved in writing." *Herrera*, 265 F.3d at 351. A defendant has an "affirmative duty . . . to preserve any issues collateral to the determination of guilt or innocence by specifying them in the plea itself." *Mendez-Santana*, 645 F.3d at 828.

"[A] criminal defendant must be diligent in protecting his rights and faithful to the procedure dictated by Rule 11(a)(2) in order to preserve non-jurisdictional issues for appeal." *Id.* However, if a defendant is successful on appeal, then he "shall be allowed to withdraw the plea." Fed. R. Crim. P. 11(a)(2).

Barnes entered his conditional guilty plea pursuant to Rule 11(a)(2) on October 20, 2015. Pursuant to his conditional plea, Barnes preserved the right to appeal the district court's denial of his motion to dismiss the indictment. This is the "specified pretrial motion" that the parties agreed upon under Rule 11(a)(2), and the arguments raised within that motion govern what Barnes can now raise on appeal before this court. Barnes's motion to dismiss is the only "specified pretrial motion" in his case. Thus, if the scheduling argument does not appear there, it is waived.

Although Barnes argues that language in his motion to dismiss is sufficient to preserve this issue for appeal, he is mistaken. He points to language from that motion, such as "[g]iven the recent changes in position regarding marijuana, both at the state and federal levels, the Court should not accept the government's general interest in regulating marijuana as a compelling interest," but all of the language he cites is part of his argument for a RFRA defense, and not a separate argument regarding the scheduling of marijuana. Upon further review of Barnes's motion to dismiss, he makes *only* two arguments: 1) that the indictment should be dismissed because he was authorized by the ONAC to grow marijuana as part of a RFRA exemption; and 2) that in the alternative, he should be allowed to raise a RFRA defense at trial. Nowhere in his motion does he ask the district court to reschedule marijuana.

Barnes may be correct that his motion argues that "recent research shows that marijuana is not as dangerous as was once believed, and in fact has medicinal properties." However, this is

not nearly enough to constitute making the argument to the court that marijuana is improperly scheduled as a Schedule I controlled substance. Nowhere does Barnes mention that it should instead be Schedule III, nor does he ask the court to do so and sentence him accordingly. In the conclusion section of his motion to dismiss, he asks the district court for only two things, and he cannot now attempt to argue on appeal an issue which he did not preserve through his conditional guilty plea. The entry of his plea waived any right Barnes had to this argument. *See Herrera*, 265 F.3d at 351.

## IV.

For the reasons stated above, we affirm the judgment of the district court.